## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JUAN MARTINEZ, A/K/A ARTURO BRITO, A/K/A ELIAS MARTINEZ, on behalf of himself, and all other plaintiffs similarly situated, known and unknown,

                    Plaintiff

                    v.

MCADAM LANDSCAPING, INC., AND W. SCOTT MCADAM AND ROBERT MCADAM, INDIVIDUALLY,

                    Defendants

No. 15 cv 6461

Honorable Judge Virginia M. Kendall

*JURY DEMAND*

## JOINT STIPULATION AND AGREEMENT
## TO SETTLE CLASS ACTION CLAIMS

Plaintiff Juan Martinez, individually and on behalf of a class of others similarly situated ("Martinez," "Plaintiff," or "Plaintiffs"), and McAdam Landscaping Inc., W. Scott McAdam and Robert McAdam ("Defendants" or "McAdam"), have entered into this Settlement Agreement and Release ("Agreement") to settle all issues between them. Except to the extent governed by federal law, the interpretation of this Agreement shall be governed by the statutes and common law of Illinois, excluding any that mandate the use of another jurisdiction's laws.

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed this lawsuit on July 24, 2015. In pursuing the claims of Class Members, and in evaluating the merits of the Settlement, Class Counsel has reviewed a significant amount of documents and data, including data regarding wage deductions taken by McAdam for uniforms, tools, and miscellaneous deductions, as well as documents pertaining to employee

authorization for those deductions. Class Counsel has also been provided with copies of the wage deduction policies in effect during the class period. The parties have had substantive discussions for purposes of clarifying the disputes between them. The parties then agreed to defer further discovery and associated disputes in favor of pursuing settlement.

In an effort to reach a settlement in this lawsuit, Class Counsel and Defendants' Counsel engaged in extensive arms-length settlement negotiations. The parties have engaged in significant informal discovery, including a production of data relating to deductions by Defendants, and a settlement conference before Judge Kendall. The Parties believe they were fully and adequately informed of all facts necessary to evaluate the case for settlement.

**B.      Defendants' Denial of Wrongdoing**

Defendants contend that they complied with the Illinois Wage Payment and Collection Act and all other laws, and deny any and all wrongdoing.  Defendants have denied and continue to deny each of the claims and contentions alleged by Martinez in this Action, and deny any wrongdoing or legal liability arising out of any facts or conduct alleged in the Action. Nevertheless, Defendants have concluded that further litigation would be protracted and expensive and would divert management and employee time. Defendants have taken into account the uncertainty and risk inherent in litigation and concluded that it is appropriate to fully and finally settle this Action in the manner and upon the terms set forth in this Agreement. Neither this Agreement, nor any document referred to or contemplated in this Agreement, nor any action taken to carry out this Agreement, may be construed as, or may be used as, an admission, concession, or indication by or against Defendants of any fault, wrongdoing or liability of any kind.  Furthermore, the Parties agree that this Agreement does not constitute an adjudication of the merits of the Litigation or any other matters released in this Agreement.

2

Accordingly, the Parties agree that none of them have prevailed on the merits, nor shall this Agreement serve or be construed as evidence that any party has so prevailed or that Defendants or the Released Persons have engaged in any wrongdoing.

### C. Inadmissibility of Agreement

Neither this Agreement, nor any document, statement, or proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendants, including any evidence of a presumption, concession, indication or admission by Defendants of any liability, fault, wrongdoing, omission, concession, or damage. Nor shall this Agreement be disclosed, referred to, offered or received in evidence against Defendants in any further proceeding in this Action, or in any other civil, criminal, or administrative action or proceeding except for the purposes of settling this Action of enforcing the settlement of this Action.

## II. TERMS

The parties agree as follows:

### A. Definitions

1. <u>Action</u> means this action, Juan Martinez et al. v. McAdam Landscaping Inc. et al., Case No. 15-cv-6461, currently pending in the United States District Court for the Northern District of Illinois.

2. <u>Claim Form(s)</u> means the forms approved by Class Counsel and Defendants which are included as part of Exhibit A, which, to recover a portion of the Settlement Payment, each Class Member must complete in full and mail, via first-class U.S. mail, within forty-five (45) days following mailing of the Notice of Settlement and Claims

Forms after the Court preliminarily approves the settlement.

3.     Class Member(s), for settlement purposes only, means: (i) Juan Martinez; and (ii) all McAdam Landscaping Inc. landscaping laborers employed on or after July 24, 2005 who experienced a deduction from their pay for uniforms and/or tools and/or miscellaneous items.

4.     Class Counsel means John Billhorn of the Billhorn Law Firm and Meghan VanLeuwen of the Farmworker & Landscaper Advocacy Project who represent Plaintiff and the Class Members.

5.     Class Representative, Plaintiff, or Named Plaintiff means Juan Martinez.

6.     Court means the U.S. District Court for the Northern District of Illinois.

7.     Covered Period means 12:01 A.M on July 24, 2005 through Preliminary Approval.

8.     McAdam or Defendants means Defendants McAdam Landscaping Inc., W. Scott McAdam and Robert McAdam.

9.     Final Approval Order means the Court's Order Granting Final Approval of this Agreement and dismissing the Litigation with prejudice.

10.     Litigation means this Action, Case No. 15-cv-6461.

11.     Notice of Settlement means the forms approved by Class Counsel and Defendants which are included as part of Exhibit A, inclusive of the Claims Form(s), which the Settlement Administrator will mail, via first-class U.S. mail, to each Class Member to explain the terms of the settlement and the claims process.

12.     Party or Parties means the Class Representative, Class Members, and Defendants.

13.    Qualified Settlement Fund means a fund that would be established by the Settlement Administrator in accordance with Section 468B of the Internal Revenue Code, which would have a unique Employer Identification Number, and for which the claims administrator would establish a designated bank account. In the event that the settlement is both preliminarily and finally approved, Defendants will make the Settlement Payment (as defined below) to the Qualified Settlement Fund ("QSF") and the Settlement Administrator shall be responsible for distributing the Settlement Payment pursuant to the terms of this Agreement.

14.    Released Person(s) means McAdam Landscaping Inc., W. Scott McAdam, and Robert McAdam, and all current and former parents, subsidiaries, or corporate siblings, and, with respect to each of them, their predecessors and successors, and, with respect to each such entity, all of its or their past, present, and future employees, officers, directors, stockholders, shareholders, owners, representatives, assigns, attorneys, agents, insurers, and any other persons acting by, through, under or in concert with any of these persons or entities, and their successors.

15.    Settlement Administrator means American Legal Claim Services LLC, which has been jointly designated by counsel for the parties to administer the settlement payment pursuant to this Agreement and orders of the Court.

16.    Settlement Class means the Class Representative and all Class Members, but does not include any Class Members who timely opt-out of the settlement.

17.    Settlement Effective Date means the first day following the last of the following occurrences: (i) the issuance of the Court's Final Approval Order; (ii) if an objection has been made to final approval of the settlement, the date on which the objector's time to appeal the Final Approval Order has expired with no appeal or other judicial review having

5

been taken or sought; or (iii) if an appeal of the Final Approval Order has been timely filed, the date the Final Approval Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review or the date the appeal(s) or other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review. If an appeal of the Final Approval Order has been timely filed, and the Final Approval Order is not affirmed in its entirety for reasons the Parties cannot cure, then all matters covered by this Agreement shall be null and void. The Parties hereby agree to waive all rights to appeal the Final Approval Order.

18. **Settlement Amount** means the total amount of $69,194.44 (Sixty-Nine Thousand, One Hundred and Ninety-Four Dollars and 44/100 Cents) to be paid by Defendants in settlement of the claims of the Class Members, allocated as provided on page one in the Notice of Settlement, less any reductions as defined in Paragraph II(E)(1) of this Agreement.

**B. Preliminary Approval**

1. On or around January 5, 2017, the Plaintiff will petition the Court for an order: (i) preliminarily certifying the Settlement Class; (ii) preliminarily approving this Agreement; (iii) approving the Settlement Administrator to mail the Notice of Settlement to Class Members describing the terms of this Agreement and informing them of their rights to submit objections and to opt out; (iv) appointing Class Counsel; and (v) preliminarily enjoining, pending the outcome of the Final Approval Hearing, all members of the Settlement Class from commencing, prosecuting or maintaining any claim already asserted in, and encompassed by, this Action, and all members of the Settlement Class (including those members who request exclusion) from commencing, prosecuting or maintaining in any court or forum other than the Court any claim, action or other proceeding that challenges or seeks review of or relief from any

6

order, judgment, act, decision or ruling of the Court in connection with this Agreement (hereinafter, "Preliminary Approval Order"). In the event the Court does not grant Preliminary Approval for any reason the Parties cannot cure, then all matters covered by this Agreement shall be null and void;

2. If the Preliminary Approval Order is entered, a briefing schedule and hearing date will be set for consideration of the parties' Motion for Final Approval and for Certification of the Settlement Class at the Court's convenience ("Final Approval Hearing"). The parties' Motion for Final Approval and for Certification of the Settlement Class will be due no earlier than forty-five (45) days after the close of the objection and opt-out period, and the Final Approval Hearing will be held no earlier than sixty (60) days after the close of the objection and opt-out period.

3. The time periods referenced in this Section II.B.2 are guidelines; actual dates will be inserted in the Preliminary Approval Order by the Court.

C.    Settlement Administrator's duties and responsibilities

The Settlement Administrator shall be bound by the terms if this Agreement. Further, the Settlement Administrator will: (1) prepare and issue payment pursuant to the terms of the parties' agreement; (2) prepare and mail the Notice of Settlement to Class Members along with a stamped return envelope; (3) seek additional information from Class Counsel or Defense Counsel when appropriate or necessary; (4) receive and file opt-out statements, objections and rescissions of opt-out statements; (5) provide a copy of all timely submitted Claim Forms to Class Counsel and Defense Counsel at the conclusion of the objection and opt-out period; (6) distribute the Qualified Settlement Fund as provided in this Agreement; (7) enforce the deadlines for claimants to submit their Claim Forms and for Class Members to affirmatively

opt-out; (8) conduct a second mailing for any individual for whom the first mailing of the Notice of Settlement was returned and for whom additional and/or new address information is available via a skip trace of some other means; (9) perform any other duties necessary to carry out its responsibilities as set forth in this Agreement.

### D. Administration by Trustee

The Settlement Administrator will serve as trustee of the Settlement Fund and will act as a fiduciary with respect to the handling, management, and distribution of the Settlement.

### E. Benefits

1. <u>Settlement Payment</u>. In exchange for the release of claims in Section II(F), Defendant will pay the gross amount of $69,194.44 ("the Settlement Payment") into a Qualified Settlement Fund in settlement to or on behalf of Plaintiff and the Class Members within fourteen (14) calendar days after the Court enters the Final Approval Order. In the event that a Class Member shall file a timely request with the Court seeking to be excluded from this settlement, then the Settlement Payment shall be reduced by an amount equal to the amount of that Class Member's payment, as defined in this Paragraph. At its discretion, Defendants may make the Settlement Payment earlier. This Settlement Payment shall include: (1) $30,000.00 in attorneys' fees for the Billhorn Law Firm and the Farmworker & Landscaper Advocacy Project; (2) $4,000 to the Named Plaintiff ("Incentive Payment") as further set forth in Paragraph II.E.4; and (3) all individual payments to the Class Members who submit a timely Claim Form, which shall come from a total remaining fund of $35,194.44. The settlement allocation for each Class Member from the $35,194.44 fund shall consist of: (1) the amount of any deductions taken for uniforms and/or tools and/or miscellaneous items from that employee during the Class Period; and (2) for deductions taken on or after January 1, 2011, 50% of the 2% statutory penalty set

forth in the Wage Payment and Collection Act calculated based upon those deductions; with deductions taken prior to January 1, 2011 being subject to a pro-rated reduced penalty amount. Exhibit B to this Agreement reflects the settlement amounts that each Class Member is eligible to receive (employees are identified by their employee number, with names and addresses to be provided to the Administrator).  Once deposited into the QSF, the Settlement Payment will accrue interest, and the interest will return to Defendants at the conclusion of this Action.

      2.    <u>Unclaimed Funds</u>. In the event that any Class Member fails to timely submit a Claim Form, cannot be found, or fails to cash a settlement check within ninety (90) calendar days from the date of issuance, their portion of the settlement amount shall be known as unclaimed funds ("the Remainder Fund").  The Remainder Fund shall be handled as follows.

60% of the Remainder Fund will be allocated as reimbursement to Defendants for: (1) administration costs paid to the Settlement Administrator; and (2) reimbursement for attorneys' fees and/or the Incentive Payment.  40% of the Remainder Fund shall be allocated as *cy pres*: 50% to the Rotary Club Chicago - Little Village and 50% to Centro Romero of Chicago, Illinois.

For Class Members who cannot be found or fail to submit a Claim Form, the funds shall go to the Remainder Fund within thirty (30) calendar days of the issuance of the settlement checks. For any Class Members who fail to cash a check within ninety (90) calendar days, the checks will be cancelled and such unclaimed funds go to the Remainder Fund within ninety-one (91) calendar days of the issuance of the settlement checks.  The Settlement Administrator shall distribute the Remainder Fund and any interest thereon within 120 calendar days of the issuance of the settlement checks.

      3.    <u>Attorneys' Fees and Costs and Claims Administration Costs</u>. The parties

have agreed that the $30,000.00 in attorneys' fees to be paid by Defendants to Class Counsel shall be paid directly to those attorneys within fourteen (14) calendar days after the Settlement Effective Date. These attorneys' fees shall be allocated as follows: the Billhorn Law Firm shall receive $8,400.00, and FLAP shall receive $21,600.00, for all attorneys' fees that have been expended and that will be expended and for all costs that have been incurred and that will be incurred in seeing this matter through the Settlement Effective Date, including but not limited to: (i) obtaining the Preliminary Approval Order from the Court; (ii) responding to inquiries from Class Members regarding this Agreement; (iii) assisting Class Members; (iv) assisting in resolving any objections; (v) defending the Settlement and securing the Order Granting Final Approval to the Settlement, including the conduct of any appellate action. Payment of attorneys' fees and costs pursuant to this Section shall be paid from the Settlement Payment.

4. _Incentive Payment to Class Representative_. In exchange for a release of all claims executed by the Class Representative as set forth in Paragraph II.F.1 below, Defendants will make an Incentive/Settlement Payment to the Class Representative in the amount of $4,000.00 for services as Class Representative and for a general release of all claims, in addition to the share of the Settlement Payment to which he is otherwise entitled through the claims process. The payment shall be paid by Defendants from the Settlement Payment. The Incentive Payment set forth above will be paid within fourteen (14) calendar days of the Settlement Effective Date.

5. _Consent to Class Certification For Settlement Purposes Only_. For settlement purposes only, Defendants consent to certification under Fed. R. Civ. P. 23(b)(3) of an opt-out settlement class of persons comprised of landscaping laborer employees who were employed at McAdams Landscaping Inc. on or after July 24, 2005 and who had a deduction

taken from their wages for uniforms and/or tools and/or miscellaneous items. The Parties agree that certification for settlement purposes is not an admission by Defendants that Rule 23 class certification would be proper absent a settlement. For purposes of settling this lawsuit only, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Class as defined above have been and are met.

### F. Release of Claims

1. <u>Scope of Released Claims: Named Plaintiff</u>. Upon the Settlement Effective Date, the Named Plaintiff, on behalf of himself and his heirs, estates, executors, administrators, assigns, transferees and representatives, will be deemed to have released and forever discharged the Released Persons from any and all claims, causes of actions, demands, debts, obligations, damages or liability of any nature whatsoever, known or unknown, that he had or may have had that arise out of employment or cessation of employment with Defendants. The claims and causes of action released under this Agreement include, but are not limited to claims for violation of:

- The Illinois Human Rights Act
- The Equal Pay Act, 29 U.S.C. §206(a) and interpretive regulations
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621 et seq.
- The Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq.
- The Health Insurance Portability and Accountability Act
- The Employee Retirement and Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq.
- Claims for breach of contract, express or implied
- Claims for compensation, including but not limited to wages, bonuses, or

- The Americans With Disabilities Act, as amended, 42 U.S.C. §§ 1201 et seq. Discrimination Act
- 820 ILCS 305/4(h) of the Illinois Workers' Compensation Act
- The Illinois Equal Pay Act
- The Illinois School Visitation Rights Act
- The Illinois AIDS Confidentiality Act
- The Illinois Genetic Information and Privacy Act
- The Illinois Wage Payment and Collection Act
- The Illinois One Day Rest in Seven Act
- The Illinois Health and Safety Act
- The Illinois Whistleblower Act
- The Illinois Victims' Economic Safety and Security Act

11

commissions
- Claims for reimbursement of any kind
- Claims arising in tort, including, but not limited to, intentional or negligent infliction of emotional distress, defamation and/or invasion of privacy
- The Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.
- The Illinois Minimum Wage Law
- The Immigration Reform and Control Act
- The Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*
- The Occupational Safety and health Act (OSHA)
- Claims for wrongful discharge
- The Consolidated Omni Bus Reconciliation Act (COBRA)
- Title VII of the Civil Rights Act of 1964, as amended.
- The Sarbanes-Oxley Act, 18 U.S.C. 1514A
- Any other claims of discrimination or retaliation of any kind
- The Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et seq.

- The Illinois Family Military Leave Act
- Smoke Free Illinois Act
- Cook County Human Rights Ordinance
- Chicago Human Rights Ordinance
- Claims for breach of the covenant of good faith and fair dealing
- Claims for benefits or fringe benefits
- Claims for, or relating to, stock or stock options
- Claims for severance or termination pay
- Any other federal, state, or local law, rule, regulation, or ordinance
- Any public policy, contract, tort, or common law
- Any basis for recovering costs, fees, or other expenses, including attorneys' fees incurred in these matters

The Named Plaintiff further agrees that the payments he is eligible to receive under this Agreement fully and fairly compensate him for any and all time spent working for Defendants, including any time worked off the clock and overtime hours.

   2. <u>Scope of Released Claims: Other Class Members</u>. Upon the Settlement Effective Date, Class Members other than the Named Plaintiff, on behalf of themselves and their heirs, estates, executors, administrators, assigns, transferees and representatives, will be deemed to have released and forever discharged the Released Persons from any and all Illinois Wage Payment and Collection Act claims pertaining to deductions arising out of the Class Members' employment or the termination thereof during the time period from July 24, 2005 through Preliminary Approval.

3.    Claim Forms and Notice of Settlement. The Claim Form issued to all Class Members shall inform them that, by signing and submitting the Claim Form, they are releasing all Illinois Wage Payment and Collection Act claims related to deductions against Defendants as further detailed in the Notice of Settlement.

4.    Class Counsel Release.  Plaintiff and Class Counsel understand and agree that any fee and cost payments made under this Agreement will be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the representation of the Class Members, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of the Action.  As further inducement to Defendants to enter into this Agreement, and as a material condition thereof, Plaintiff, Class Members and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against Defendants for attorneys' fees or costs arising from or relating to the individuals and matters identified in this Agreement.  As a further inducement to Defendants to enter into this Agreement, and as a material condition thereof, Plaintiff, Class Members and Class Counsel further understand and agree that the fee and cost payments made pursuant to this Agreement will be the full, final, and complete payment of all attorneys' fees and costs that are released, acquitted, or discharged under this Agreement.  As further inducement to Defendants to enter into this Agreement, and as a material condition thereof, Plaintiff, Class Members and Class Counsel warrant and represent that they will not, nor will any of their employees, agents, or representatives of their firms, file any claims for attorneys' fees or costs, including, but not limited to, bills of costs or requests for attorneys' fees, for any fees and/or costs arising out of the Action, and Plaintiff, Class Members and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge Defendants of any liability for such fees and/or costs.

13

Nothing in this Paragraph shall preclude Plaintiff from appealing the allocation of Class Counsel's fees, costs and/or Incentive Payment should the sum awarded by the Court fall below that requested.

### G. Settlement Administration

1. <u>Duty of Cooperation</u>. The Parties agree to cooperate in obtaining expeditious preliminary and final approval of this settlement.

2. <u>Joint Stipulation of Settlement</u>. The Parties will submit this Agreement for review by the Court with a Proposed Order Preliminarily Approving Settlement on or before January 5, 2017 unless the Court and the parties agree to extend that date.

3. <u>Data on Class Members</u>. No later than fifteen (15) calendar days after Preliminary Approval, Defendants will provide to the Settlement Administrator and Class Counsel a file listing the names, last known addresses, and social security numbers or, if social security numbers are unavailable, dates of birth of all Class Members (if available). In the event that Notices are returned as undeliverable to the Administrator, then Defendant shall provide the last known phone number of that Class Member to Class Counsel and the Administrator. Class Counsel agrees to keep this file and the information it contains confidential, to use it only for the purpose of administering this settlement, and to return it, with all copies, to Defendants after the settlement administration is concluded.

4. <u>Allocating Settlement Amounts</u>. As set forth in Paragraph II(E)(1), each Class Member who timely returns a Claim Form shall be eligible for a settlement payment pursuant to his or her settlement allocation. Upon the close of the Notice Period, the Settlement Administrator shall determine the final number of Class Members who timely submitted Claim Forms. The Settlement Payment shall then be distributed to the Class Members who timely

submitted claims pursuant to Exhibit B and Paragraph II(E)(1). Any unclaimed funds remaining after distribution shall be handled as set forth in Paragraph II(E)(2) & II(E)(3).

5. <u>Notice of Settlement</u>. Within thirty (30) calendar days after the Court preliminarily approves the settlement, a Notice of Settlement will be sent by the Settlement Administrator to each Class Member by first-class U.S. mail, postage prepaid.

6. <u>Claim Forms</u>. Attached to the Notice of Settlement for Class Members will be a Claim Form. The Claim Form shall inform class members that, by signing and submitting the Claim Form, they are releasing Illinois Wage Payment and Collection Act claims related to deductions against Defendants as further detailed in the notice accompanying the Claim Form.

7. <u>Diligence in Finding Claimants</u>. In the event that any Notices of Settlement are returned to the Settlement Administrator, with respect to those returned Notices only, the Settlement Administrator will use standard means, including the National Change-of-Address database or equivalent, to obtain forwarding addresses before mailing and will use appropriate skip tracing to maximize the probability that the Notice and Claim Form or Release will be received by all Class Members.

8. <u>Timely Claim Forms</u>. Class Members will have forty-five (45) calendar days from the date of mailing to submit a Claim Form or to submit a written request for exclusion or objection. The timeliness of the Claim Form will be measured by the date it is postmarked. Persons seeking to request exclusion must do so in writing. No Claim Forms will be honored if postmarked late. The Settlement Administrator will review the Claim Forms and certify to all counsel what claims were timely filed.

9. <u>Deficient Claim Forms</u>. If a Claim Form is submitted timely, but is

15

deficient in one or more aspects (for example, the release language has been altered), the Settlement Administrator will return the Claim Form to the claimant within ten (10) business days of receipt with a letter explaining the deficiencies and stating that the claimant will have ten (10) days from the date of the deficiency notice to correct the deficiencies and resubmit the Claim Form. The envelope containing the resubmitted Claim Form must be postmarked within ten (10) days of the date on the deficiency notice to be considered timely, absent a showing of good cause.

        10.    <u>Opt-Out Procedures</u>. Class members seeking to exclude themselves from this settlement must provide their name and address and must sign a statement stating that "I understand that I am requesting to be excluded from the class monetary Settlement and that I will receive no money from the Settlement. I understand that if I am excluded from the class, I may bring a separate legal action seeking damages, but might recover nothing or less than what I would have recovered if I filed a claim under the class monetary provisions in this case." (the "Opt-Out Notice"). Each Opt-Out Notice must be sent to the Settlement Administrator, with copies to Class Counsel and Defendant's Counsel within forty-five (45) calendar days from the date of mailing of the Notice of Settlement. The Opt-Out Deadline applies notwithstanding any assertion of non-receipt of the Notice by any Class Member.

        The Preliminary Approval Order shall provide that no person shall purport to exercise any exclusion rights of any other person, or purport to opt out other Class Members as a group, aggregate or class involving more than one Class Member, or as an agent or representative. Any such purported opt-outs shall be void, and the Class Members who are the subject of the purported opt-out shall be treated as a Settlement Class Member for all purposes.

        If the number of Opt-Out Notices equal or exceed fifty (50) persons, then Defendants in

their absolute discretion may revoke this Agreement at any time prior to the entry of the Final Judgment and Order by notifying Class Counsel and the Court.

11.     Rescinding Decision to Opt Out. Class Members will be permitted to withdraw or rescind their opt-out statements by submitting a "rescission of opt-out statement" to the Settlement Administrator, which will include the following language: "I previously submitted an opt-out statement seeking exclusion from the settlement. I have reconsidered and wish to withdraw my opt-out statement. I understand that by rescinding my opt-out I may be eligible to receive an award from the settlement and may not bring a separate legal action against Defendant with respect to any Released Claims." A Class Member wishing to submit a rescission statement will sign and date the statement and deliver it to Settlement Administrator postmarked no later than forty-five (45) calendar days after the date of the mailing of the Notice.

12.     Objections to Settlement.   Any objections to this settlement must be written and postmarked no later than forty-five (45) calendar days after the mailing.   The objecting Class Member must mail the written objection to the Settlement Administrator with copies to Class Counsel and Defendant's Counsel, no later than the above deadline.   The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection.   The Settlement Administrator shall promptly notify and send a copy of the objection to both Defendant's Counsel and Class Counsel, and shall provide Class Counsel with objecting Claimant's last known telephone number as reflected on the Claim Form.   Class Members who issue an unrescinded Opt-Out Notice may not file objections to this Agreement.

13.     Class Members Who Do Not Respond. Class Members, other than those who timely exclude themselves from the Class, who do not submit a valid Claim Form will not be allocated any portion of the settlement, but they will be bound by the judgment dismissing

17

this Action on the merits with prejudice and will be subject to and bound by the release in Paragraph II(F)(2).

14.    <u>Motion for Final Approval</u>. Class Counsel will prepare, subject to Defense Counsel's review and consent, a motion for final approval of the settlement. Class Counsel will timely file the motion for final approval of the settlement, which will include the following proposed orders:

(i)    an Order Granting Final Approval to the Settlement, adjudging the terms to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(ii)    an Order dismissing this action on the merits, with prejudice, in accordance with the terms of this Agreement;

(iii)    an Order approving the Incentive/Settlement Payment to the Named Plaintiff; approving the payment of attorneys' fees and litigation expenses and costs to the Billhorn Law Firm and FLAP; and approving payment of reasonable settlement administration costs and fees to the Settlement Administrator as defined herein.

15.    <u>Fairness Hearing</u>. The Court, if it sees fit, will hold a fairness hearing before issuing the Final Approval Order regarding whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the Class Members and regarding Plaintiff's motion for an Incentive Payment for the Named Plaintiff.

16.    <u>Final Approval Order</u>. The Final Approval Order will:

(i)    dismiss with prejudice all claims against Defendants in this Action; and

(ii)    declare that all Class Members (except for Class Members who

18

affirmatively opt-out) are bound by the release of claims described above.

17.     Payments to Class Members. The individual settlement payments will be distributed within fourteen (14) calendar days after the Settlement Effective Date to Class Members who have filed timely and valid claims. No individual settlement payments will be distributed unless and until the Settlement Administrator has delivered to Defendants copies of signed Claim Forms for Class Members who timely submitted claims and did not affirmatively opt out.

18.     Distributing Settlement Payment. Within fourteen (14) calendar days after the Settlement Effective Date, subject to the terms of this Agreement, the Settlement Administrator will: (i) mail a check to each Class Member who timely returns a Claim Form within the terms set forth in this Agreement in an amount equal to the allocation to each such Class Member as described in Exhibit B and Paragraph II(E)(1) of this Agreement; (ii) provide to Class Counsel and Defendants' counsel a statement of how much of the Settlement Payment remains in the Remainder Fund and the amounts of expected distribution.

19.     Unclaimed Funds. If the Settlement Fund is not fully exhausted after the distribution of the individual settlement payments (because, for example, not all claimants filed claims, cashed checks or could be found), any remaining funds will distributed as set forth in Paragraph II(E)(2). Such payments will be made by the Settlement Administrator pursuant to the time frame set forth in Paragraph II(E)(2).

20.     Inquiries or Communications from Claimants. The Settlement Administrator will respond to all inquiries or communications from Class Members by reference to the Settlement Agreement. Any inquiries that cannot be resolved by reference to the Settlement Agreement shall be raised with counsel for both parties for resolution. The parties

agree to cooperate to resolve any post-settlement inquiries or communications with Class Members. If Defendants receive an inquiry about the settlement from a current employee or representative of a current employee, Defendants may inform the employee or representative that: (a) the litigation involved a dispute regarding wage deductions for uniforms, tools, and miscellaneous items; (b) the Named Plaintiff claimed that Defendants were required to receive written authorization at the time of each deduction; (d) Defendants deny any wrongdoing; and (e) Defendants have agreed to settle, in part, to avoid the cost of litigation. Defendants will further inform any such employee or representative to contact the Settlement Administrator if he or she has further questions about the Settlement Agreement.

21.     Altering Dates. Upon written agreement or with Court approval, the Parties may alter the above dates or time periods.

**H.     Promises**

1.     No Admission. Nothing contained in this Agreement or in any other document related to this Agreement or its approval will be construed as or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants. Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

2.     Nondisclosure of the Settlement or its Terms: Except for any information already publicly available in the court file, the parties will not disclose information concerning the settlement or its terms.

3.     Taxes. The Settlement Administrator shall issue a tax form W-2 for the portion of the settlement payments to Class Members allocated as reimbursement of wage deductions and shall deduct customary and required tax deductions from these settlement

payments to Class Members. The amount of federal income tax withholdings will be based upon a flat withholding rate for supplemental wage payments of twenty-eight (28) percent. Plaintiff's Incentive Payment shall be subject to federal income tax withholdings in accordance with the claimed exemptions on his IRS Form W-4, which shall be provided to the Settlement Administrator.

Regarding all payments made to Plaintiff and to Class Members as provided by sections II E (4), G (17) and G (18), the Settlement Administrator will withhold all applicable payroll taxes and will timely transfer such tax withholdings to McAdam Landscaping, Inc. ("McAdam"). McAdam shall be solely responsible for remitting such taxes to the appropriate taxing authorities. McAdam will be responsible for paying from its own funds Federal Unemployment Tax Act ("FUTA") and the employer share of FICA taxes on all applicable amounts paid under this Agreement. For the settlement payments to Class Members allocated as statutory damages under the Illinois Wage Payment and Collection Act, Plaintiffs shall receive a tax form 1099 for such payments to the extent they exceed $600. Except as to customary tax withholdings made by Defendants in connection with the payments to Class Members and Defendants' share of customary tax payments related to the W-2 payments, Class Members shall be solely liable for any and all income tax, employment taxes or other taxes or assessments owed by them in connection with any payment made pursuant to this Agreement.

4. **Taxes on Incentive/Settlement Payment**. The Class Representative shall receive a Form W-2 for half of the total and a form 1099 for the remainder.

5. **Waiver of Appeals**. The parties agree to waive all appeals and to stipulate to final certification of the Rule 23 claims but only for purposes of implementing this Settlement. This provision is not applicable in the event the Court modifies the terms of this

Settlement in any manner.

6.     CAFA Compliance. In compliance with 28 U.S.C. § 1715, within ten (10) days of the Parties filing a motion for preliminary approval of this Settlement, Defendants will supply notice regarding the settlement of this Action to the appropriate federal official and appropriate state officials in each state in which Class Members reside.  The Parties agree to cooperate to ensure that the Final Approval Order is not entered prior to ninety (90) days after service of notice under CAFA.

7.     Named Plaintiff - No Rehire. The Named Plaintiff agrees that, in exchange for the consideration noted in Paragraph II(E)(4), he will not be re-employed with Defendants, and that he will not apply for or otherwise seek employment with Defendants at any time. The Named Plaintiff acknowledges that his agreement not to seek future employment as just stated is purely contractual and is in no way involuntary, discriminatory or retaliatory.

I.     **Miscellaneous**

1.     Authority. The signatories represent that they are fully authorized to enter into this Agreement and bind the parties to these terms and conditions.

2.     Mutual Full Cooperation. The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties to this Agreement will use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary or ordered by the Court, or otherwise, to effectuate this Agreement and the terms set forth in it. As soon as practicable after execution of this Agreement, Class Counsel will, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's final

approval of the Parties' settlement.

      3.    <u>No Prior Assignments</u>. The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged except as set forth in this Agreement. The payment of the fees to Class Counsel shall constitute full satisfaction of the obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or costs in the Action incurred by any attorney on behalf of the Named Plaintiff and the Class Members, and shall relieve Defendants, the Qualified Settlement Fund, and Defendants' Counsel of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses or costs to which any of them may claim to be entitled on behalf of the Named Plaintiff or the Class Members and which arise out of the allegations in the First Amended Complaint. In exchange for such payment, Class Counsel will remise, release and forever discharge any attorneys' lien on the Qualified Settlement Fund.

      4.    <u>Notices</u>. Unless otherwise specifically provided in this Agreement, all notices, demands or other communications given will be in writing and will be deemed to have been duly given as of the third business day after mailing by U.S. registered or certified mail, return receipt requested, addressed as follows:

      To the Plaintiffs:
      Meghan A. VanLeuwen
      Farmworker & Landscaper Advocacy Project
      33 N. LaSalle Street Suite 900
      Chicago, IL 60602

      To the Defendants:
      David L. Miller
      Rock Fusco & Connelly LLC
      321 N. Clark, Suite 2200

Chicago, IL 60654

5. _Construction_. The Parties agree that the terms and conditions of this Agreement are the result of lengthy, arms-length negotiations between the parties and that this Agreement will not be construed in favor of or against any party by reason of the extent to which any Party or the Party's counsel participated in the drafting of this Agreement.

6. _Construction of Captions and Interpretations_. Paragraph titles or captions in this Agreement are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or any provision in it.

7. _Modification and Waiver_. This Agreement may not be changed, altered, or modified except in writing and signed by the parties and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties. The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach. If the Court modifies any portion of this Agreement without the consent of both parties, either party may void this Agreement in its entirety, and the parties shall revert to the status quo ante.

8. _Privacy of Documents and Information_. The Named Plaintiff and Class Counsel agree that none of the documents and information provided to them by Defendants, including but not limited to the documents and information received in connection with the Action through written discovery, the administration of this Settlement, or any other means, shall be used for any purpose other than prosecution of this Action and the administration of this Agreement.

9. _Interim Stay of Proceedings_. The Parties agree to hold all proceedings in the Action, except such proceedings necessary to implement and complete the Agreement, in

24

abeyance pending the hearing on the Final Approval Order.  In this regard, the Parties stipulate that until the Final Approval Order is entered, neither party need serve or respond to discovery, or file responsive pleadings or motions.

        10.    <u>Amendment or Modification</u>.  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

        11.    <u>Integration Clause</u>. This Agreement contains the entire agreement between the parties relating to the Agreement and transactions described herein, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or a Party's legal counsel, are merged in this Agreement. No rights may be waived except in writing.

        12.    <u>Binding on Assigns</u>. This Agreement will be binding upon and will inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

        13.    <u>Counterparts</u>. This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Agreement, which will be binding upon and effective as to all parties, subject to Court approval.

DATED: _____, 2017.  JUAN MARTINEZ


By: _____


DATED: _____, 2017.  COUNSEL FOR JUAN MARTINEZ


By: _____
        John Billhorn


DATED: _____, 2017.  MCADAM LANDSCAPING INC.


By: _____


Title: _____


DATED: _____, 2017.  COUNSEL FOR MCADAM LANDSCAPING INC.


By: _____
        David L. Miller